**BURK et al. v. UNITED STATES.**

**No. 10364.**

Circuit Court of Appeals, Fifth Circuit.

April 14, 1943.

---

[5] Cf. Rosenberg v. Hano, 3 Cir., 121 F. 2d 818, 821.

[6] The term "person" includes a corporation. 15 U.S.C.A. § 77b(2).

Roderick Beddow and G. Ernest Jones, both of Birmingham, Ala., for appellants.

Jim C. Smith, U. S. Atty., of Birmingham, Ala., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellants and five others were charged in sixteen counts of an indictment with conspiring with others to violate, and with actual violations of the internal revenue laws forbidding the illicit distilling and handling of intoxicating liquors. All of them were found guilty under count one, the conspiracy count, and all, except George W. Burk, Jr., who was found guilty on count three, were found not guilty on all of the substantive counts. All of the convicted defendants have appealed, and each is here insisting (1) that a verdict should have been directed in his favor, and (2) that if not, the trial was marred by errors of markedly prejudicial nature which required a reversal as to him. Conceding that as to each defendant there was evidence, which, if believed, would tend to prove him guilty of some wrongful act, appellants urge upon us that the evidence taken at its strongest for the Government is not sufficient to support a verdict of guilty of the conspiracy charged, while George Burk, Jr., insists that the verdict, as to him, of guilty under count three, of unlawfully engaging in and carrying on the business of a distiller is wholly unsupported. The point made as to count three is that to convict of doing business as a distiller, it is necessary to show more than isolated, disconnected illegal acts, there must be a con-

tinuity about them characteristic of the carrying on of a business. As to the conspiracy charge, there is a main point that the indictment charged a general conspiracy, the proof at best showed several disconnected conspiracies, and thus there was a fatal variance between charge and proof, and a secondary one that the conspiracy charged was one to violate the federal laws and the conspiracy, if any, proved was one to refrain from performing the obligations of their office to police their bailiwick and arrest in it for violations of state laws. Because of the literally hundreds of charges they ask and the numerous objections to evidence they make, the errors they assign are almost legion.

Taking appellants' points up in order, we dispose first of Burk's appeal from his conviction on the third count. It is true, as appellants claim, that the word "business" ordinarily implies an employment or occupation that is continuous, Words and Phrases, Vol. 5, Perm.Ed., p. 970; State v. Scampini, 77 Vt. 92, 59 A. 201. It is also true that it has been held that proof of a single sale standing alone is not sufficient to support a verdict of carrying on the business of a retail liquor dealer, Bailey v. United States, 6 Cir., 259 F. 88, and if the evidence showed no more than that Burk had on one occasion furnished the witness Truett a sack of sugar to make some whiskey and Truett had given him five gallons of the whiskey it made, it might well be that a verdict of carrying on the business of a distiller could not be sustained. But this is not what the testimony showed. Taking the Truett transaction by itself, it showed much more than this. It showed Burk inciting Truett to go into the business of illicit distilling, and that the sugar was furnished to start him in it. Truett, fixing this transaction in the last of October, 1939, says that he operated this still until right around the last of December, making one run a week, twenty to twenty-one gallons of whiskey each run. The damaging thing about this testimony is not merely that Burk furnished him some sugar and that he paid Burk five gallons of whiskey, it is Burk's incitement to Truett to enter the whiskey business.[1]

Certainly this is ample evidence that Truett was unlawfully carrying on the business of a distiller and that Burk aided and abetted him in it. But the testimony of Truett is by no means all of the testimony which supported the verdict on this count against Burk. The record is filled with testimony that other persons had similar arrangements with him, and the testimony of Green, his deputy, if believed by the jury, made him out an aider and abetter of distillers and whiskey makers of sorts. There is no merit in Burk's claim that the evidence does not sustain his conviction on count three.

Coming now to the convictions on the conspiracy count, we think it beyond question that the evidence introduced by the government, if believed, was sufficient to convict each of the defendants of the conspiracy the indictment charged. All of them except Chancellor are shown to have been parties to illicit arrangements with law violators to encourage and protect them in the business of unlawfully distilling and selling liquors, and Chancellor, who was not an enforcement officer but an active violator of the law, was shown to have been one of those with whom the arrangements were made. An examination of appellants' legal positions in the light of the record leaves in no doubt that they are not well taken. The testimony of Green, the deputy sheriff, the nexus between the two administrations makes out a picture not of separate and disconnected conspiracies but of one general conspiracy on the part of the law enforcement officers of Talladega County to incite and to encourage the unlawful making and vending of intoxicating liquors upon a payoff system which gave quid pro quo protection against arrest in return for regular and definite payments. Appellants' effort to split the conspiracy into two separate ones, first one under Sheriff Sam Burns, and next one under Sheriff George Burk, will not, therefore, at all do. Green's testimony not only connects the two administrations with the general conspiracy charge, but he, himself, is the bridge which carries the conspiracy over from the first into the second administration and, from the standpoint of the criminal conspiracy,

---

[1] On cross-examination, Truett said: "He asked me when I went in what was the trouble; wasn't I making whiskey? I went up there to see him on some business concerning making whiskey too. And he egged me on into going into the whiskey business. I was going up there to see him concerning that same little matter. * * * I owed Mr. Burk ten dollars. That is what he charged for making liquor,—ten dollars a week."

makes the two administrations one. True, the defendants deny Green's testimony, and undertake to impeach him, but the fact remains that if his evidence is believed, there were not two conspiracies but one, a conspiracy of the law officers of Talladega County, beginning under Sheriff Burns and continued under Sheriff Burk, to aid and abet liquor law violators, that is persons illicitly running distilleries, illicitly possessing mash, and illicitly doing the other things forbidden by the revenue laws which the indictment charges them with conspiring to do. Nor are appellants in any better position on their insistence that Wilder v. United States, 10 Cir., 100 F.2d 177, Weniger v. United States, 9 Cir., 47 F.2d 692, and Rossi v. United States, 9 Cir., 49 F.2d 1, hold that to make out a conspiracy charge against state officers, it was not sufficient for the proof to show merely that they had furnished incitement and protection to those violating the law by urging them to go into the illicit whiskey business and promising them for pay that they would not arrest them, it must also appear that they made specific mention of the federal laws and promised protection against federal arrest. The appellants have entirely misapprehended the effect of those cases and the state of the law. Those cases do not, they could not properly hold this. All that they hold is that proof alone of a failure on the part of state officers to enforce the state laws is not a sufficient proof of a conspiracy on their part to violate the federal laws. They do not, they could not, on principle, hold that proof as here of their inciting violators to illicitly distill and handle liquors by receiving weekly pay from them under agreements not to arrest but to protect them for their violations, is not sufficient proof of a conspiracy to violate those laws. We held to the contrary in Shaw v. United States, 5 Cir., 41 F.2d 26 and Collins v. United States, 5 Cir., 65 F.2d 545, as have many other courts. Cf. Diehl v. United States, 8 Cir., 98 F.2d 545, Dale v. United States, 7 Cir., 66 F.2d 666. Knowledge of a state officer alone that federal laws are being violated, followed by inaction on his part might not suffice to prove that he was in a conspiracy to violate those laws, but no such case was made by the evidence here. Here the proof, if believed, establishes that the officers incited and were taking pay for permitting the violations to go on unmolested, and Chancellor is shown to have been one of the violators. Certainly such proof makes out a case of engaging in a conspiracy to violate the laws which those paying for protection were violating. Cf. Marino v. United States, 9 Cir., 91 F.2d 691, 113 A.L.R. 975. It was, therefore, not error to deny defendants' motion for a directed verdict.

We turn now to the numerous errors assigned to the conduct of the trial; the overruling of demurrers to the indictment, denial of motions for severance, the admission and exclusion of evidence and the refusal of charges. The demurrers do not attack the charging part of the indictment. They have two main grounds, one directed to the allegations as to overt acts, the other to misjoinder. As to the first, appellants fall into the same error which caused them to introduce and request some sixty charges as to the overt acts. This error is the assumption that overt acts are a part of the offense charged and that a defect in allegation as to any overt act affects the whole indictment. As pointed out in United States v. Manton, 2 Cir., 107 F. 2d 834, 838, this is not so: "The offense becomes complete when the agreement is made. The only effect of the requirement that an overt act shall be shown is to permit an abandonment of the conspiracy in the meantime and the consequent avoidance of the penalty which the statute imposes. 'This offense does not consist of both the conspiracy and the acts done to effect the object of the conspiracy, but of the conspiracy alone. The provision of the statute, that there must be an act done to effect the object of the conspiracy, merely affords a locus pœnitentiæ, so that before the act done either one or all of the parties may abandon their design, and thus avoid the penalty prescribed by the statute.' United States v. Britton, 108 U.S. 199, 204, 205, 2 S.Ct. 531, 534, 27 L.Ed. 698." Misjoinder, like the motion for severance, presents nothing for review here unless in some special case a clear abuse of discretion is shown. The statute, Sec. 557, 18 U.S.C.A., expressly authorizes joinder of offense, and severance, while permissible in the discretion of the court, is not a ground of error unless it is clear that that discretion has been abused and injury has resulted from the abuse. The fact that all of the appellants except Burk were acquitted on all of the counts except that charging conspiracy, and Burk was convicted on only one of them, makes it plain that the assignment on severance is without merit. As to the objections to the evidence, while it may

be said of one or two of them, that combing the record with a fine toothed comb and examining them from the standpoint of abstract perfection, there was perhaps technical error, it is clear that such error was not prejudicial. For in the one instance in which the error might have been said to be substantial, admission of the affidavit of Hughes, this error was cured by a charge, given at defendant's request, that the affidavit was not admitted and could not be taken as proof of any of the facts in it but only as impeachment. If more was needed to cure the error, appellants are not in a position to complain that more was needed for the judge gave the charge they asked and no further charge was requested on that point. Cf. Johnson v. United States, Feb. 15, 1943, 63 S.Ct. 549, 87 L.Ed. —, and United States v. Manton, 2 Cir., 107 F.2d 834. When it comes to the complaints in respect of the refused charges, appellants having requested and submitted 436 numbered requests to charge have the burden of showing not merely that winnowing through that great sheaf some kernel of wheat could be found, but that some one of them supplied some grievous oversight, omission or failure in the main charge and that in some way besides merely handing them up en masse, this error was called to the attention of the trial judge. It would be little short of a miracle if in reading over the great mass tendered, some proper charge had been overlooked. The practice adopted here of multitudinously requesting charges is so unreasonable and so unfair to the trial judge that to reverse him for refusing any of them would normally only be warranted upon a showing of error of the greatest and most grievous kind. No such showing is made here. Because, however, this is a criminal case of a serious and weighty nature involving state law enforcement officers, and because of the charges made in the brief and on oral argument that the indictments are the result of resentment on the part of Green, a discharged deputy sheriff, and of official jealousy on the part of the federal officers, and resentment on their part of the failure of the state officers to be at their beck and call, we have carefully examined the main charge, the charges requested, and those given for error. We have found that the general charge which was excepted to in only one particular, and that exception of no moment, and the thirty-one requested charges the court gave fully presented to the jury every theory of the defendants which was supported by any substantial evidence and that the charge as a whole was clear and fair and fully protective of defendants' rights.[2]

We find the record free of reversible error. The judgment is affirmed.

---

[2] Because we have commented on the unreasonable number of requested charges, we think it fair to say that the more than 400 special requests, though burdensome enough were not as burdensome and unfair to the trial court as their mere number would indicate. This is because as to each count and as to each defendant, there was a separate request for the same charge. For instance, 100 of the requests were for directed verdicts. Some 60 of them, proceeding on the erroneous notion that the overt acts were part of the offense, were for directed verdicts, as to the overt acts. Then in many instances the same charge would be requested separately as to each defendant and as to each count.