## UNITED STATES v. NEW YORK GREAT ATLANTIC & PACIFIC TEA CO., Inc., et al.

### No. 10603.

Circuit Court of Appeals, Fifth Circuit.

July 30, 1943.

Rehearing Denied Sept. 1, 1943.

Robert C. Barnard and Horace L. Flurry, Sp. Assts. to Atty. Gen., and Earl A. Jinkinson, Sp. Atty. Dept. of Justice, and Charles S. Brewton, Jr., Sp. Atty., all of Dallas, Tex., for appellant.

John N. Touchstone and Geo. S. Wright, both of Dallas, Tex., Brien McMahon, of Washington, D. C., and Caruthers Ewing, of New York City, for appellees.

Before HUTCHESON and WALLER, Circuit Judges, and COX, District Judge.

HUTCHESON, Circuit Judge.

The indictment brought under Sections 1 and 2 of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1, 2,[1] was in two counts. The first charged a continuing conspiracy to unreasonably restrain interstate trade and commerce in food and food products among the several states. The second charged a continuing conspiracy to monopolize a part of the interstate trade and commerce among the several states in such food and food products. The defendants, except Carl Byoir and Business Organization, Inc., were New York Great Atlantic & Pacific Tea Co., Inc., corporations alleged to be its subsidiaries, and certain individuals alleged to be officers, agents and employees of the A & P group. Business Organization, Inc. and Carl Byoir,[2] as chairman of its board, were alleged to be public relations counsel for the group.

The A & P group filed a lengthy demurrer in which, under ten numbered paragraphs, some of them greatly subdivided, they attacked, first, the sufficiency of the jurisdiction and venue allegation of the indictment, second, its validity as a whole, and, third, various paragraphs and portions of it as vague, indefinite and wanting in specificity, and as alleging not facts but conclusions. Business Organization, Inc., in a brief demurrer and motion to quash, denied the jurisdiction of the court, attacked the indictment generally for insufficiency to allege an offense, and particularly for its failure to state facts showing its criminal complicity in the crimes charged.

The district judge was of the opinion that the indictment did sufficiently charge offenses under the statute. He thought, though, that the demurrers should be sustained, (1) because the indictment contained so many irrelevant and inflammatory statements designed to create and creating a prejudice against the defendants as that it would be impossible for them to have a fair trial under it, and (2) because it contained no allegation of an overt act done in the Northern District of Texas sufficient to give that court jurisdiction of the offense. Setting his views out with care in an oral opinion, he entered an order sustaining the demurrers and dismissing the indictment, and the United States has appealed.

Here, denying that the allegations of the indictment as to the bigness of the group defendants, both absolutely and in relation to other food handlers, had an inflamma-

---

[1] "Sec. 1. Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal: * * * Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished. * * *

"Sec. 2. Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations,

shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished * * *."

[2] The only reference in the indictment is par. 5a as follows:

"Business Organization, Inc., a corporation duly incorporated under the laws of New York, with its principal office in New York, New York, and whose Chairman of the Board is Carl Byoir, is hereby indicted and made a defendant herein. Said Carl Byoir is also indicted, individually and as an officer, director, and agent of Business Organization, Inc. Said defendants are public relations counsel for the A & P group."

tory purpose or effect, and insisting that all of these allegations are relevant to the charge properly made in the indictment that the defendants had conspired to restrain and to monopolize trade and commerce among the several states, the United States urges upon us that the indictment may not be quashed and dismissed because of them. As to the venue issue, the United States, pointing out that the indictment charged both that the conspiracy was in part formed, and that overt acts in furtherance of it were performed, in Dallas County, insists that its sufficiency may not be questioned.

Appellees of the A & P group support the ruling below by a full and thorough brief and argument, urging upon us that the indictment (1) fails to show that there was jurisdiction in the court a quo in that the allegation that the conspiracy was formed in part in Dallas County was but a conclusion and that the overt act alleged as to Dallas County was not alleged to be in furtherance of the conspiracy, (2) fails to allege a combination and conspiracy in restraint of interstate trade and commerce in violation of the Sherman Anti-Trust Act, (3) alleges not facts but conclusions which are not binding upon the defendants, (4) is, in its allegations, too vague and indefinite to charge an offense, (5) is duplicitous, and (6) is inflammatory and prejudicial.

Appellee, Business Organization, Inc., while urging on its part that the venue was improperly laid in Dallas, and that the indictment contains inflammatory allegations prejudicial to a fair trial, makes its main attack upon the indictment upon the ground that whatever might be the correct view as to whether the indictment states an offense as to the other defendants, no facts are alleged as to Business Organization, Inc. and Carl Byoir, charging them with complicity in any criminal act, and the indictment is, therefore, wholly insufficient as to them.

■■ We agree with the district judge and with the appellees that there are many allegations in the indictment which are irrelevant and unnecessary to the charging of the offense and which, if not designed to be, are in fact inflammatory and prejudicial, and that the defendants are entitled to relief against them. We think it clear, however, that the necessary relief from their effect may be accorded[3] without dismissing the indictment and requiring a reindictment and that it was error for the court to quash the indictment and dismiss it for this ground. Only a careless and cursory reading of the indictment would give support to the view that the only offense it charges is bigness. It does state that the A & P group of defendants constitutes a powerful group, but this is stated not as the offense but by way of background and inducement and as throwing light upon the reasonableness of the charge of a conspiracy to restrain and monopolize. It is true that the indictment is for conspiracy and not for the commission of a substantive offense and that to convict for a conspiracy it would not be necessary to prove that those conspiring had the ability to make their purpose effective, but it is equally true that it is entirely proper in an indictment and prosecution for conspiracy to allege and prove that the defendants charged with conspiring had the ability to give effect to the conspiracy charged.

While, therefore, defendants are entitled to be relieved against and protected from all the allegations of the indictment, which, going beyond the legitimate office of pleading to bring forward relevant background, are inflammatory and prejudicial, they are not entitled, because of inflammatory allegations, to the relief of dismissal of the indictment, or to have excluded, from the jury facts as to the group set up, which are relevant to and have bearing upon the conspiracy charged.

■ Of appellees' points that the indictment is not sufficient because it consists mainly of conclusions and is vague and indefinite in its allegations of fact, we need only say that no one can read the indictment without understanding what is charged; that the A & P group defendants have entered into a common understanding to control, dominate and restrain trade in food and food products among the states and have instituted practices designed and calculated to make the conspiracy effective. Indeed, the indictment, too wordy to be good pleading, has the fault not of vagueness and indefiniteness, but of a too detailed pleading of evidence, a fault, however, which does not

---

3 Ralston v. Cox, 5 Cir., 123 F.2d 196, at page 198 and cases cited in Note 4.

Also Johnson v. United States, 5 Cir., 124 F.2d 101.

affect the validity of the indictment. As to the charge that it contains mere conclusions, a stereotyped complaint against indictments, we need only call attention to the fact that while good pleading in an indictment requires allegations of fact rather than of conclusions, the line between what is a statement of fact and what is a conclusion is not so broadly and easily drawn as that he who runs may read. Indeed, as the cases and text books amply show, it is sometimes quite finely drawn. Most words are syntheses, that is, the result of conclusions which have been drawn. We analyze to synthesize. We synthesize to analyze again. Tested by the rule and principles applicable, the indictment, in its statement of what was agreed to be done and what was done, sufficiently alleges facts rather than conclusions, and is fully sufficient to support the charge.

▆▆▆ Appellee's claim that the indictment is duplicitous in that it charges more than one separate offense seems to be the familiar one so often raised in connection with conspiracy indictments involving many persons and facts, that instead of charging one general conspiracy, the indictment charges many separate ones. In George W. Burk et al. v. United States, 5 Cir., 134 F.2d 879, we have had recent occasion to consider this issue of whether the indictment charged one general or several separate conspiracies, and have there pointed out that where a common thread runs through all of the actions and a common purpose animates all of the conspirators, the fact that many persons come into, and many acts are embraced in, the conspiracy does not make the charge duplicitous by charging many instead of one conspiracy. Here the common thread is the dominance of what is called the headquarters defendants in the A & P group. As Green, in that case, was the bridge, which carried the conspiracy over from the first into the second administration and, from the standpoint of the criminal conspiracies, made the two administrations one, so here, upon the allegations of the indictment, the interrelation and ramifying activities of all the associated and affiliated companies and their dominance and control by the headquarters defendants make the conspiracy charged not several but one.

▆▆▆ It remains only to consider the two points most vigorously and confidently urged against the indictment, (1) that it does not allege facts showing that the venue jurisdiction was properly laid, and (2) that it fails to charge a conspiracy and combination in violation of the Sherman Anti-Trust Act. Unless, as appellees argue, the positive allegation in Par. 22 of the indictment that the conspiracy was "formed * * *" and that in Par. 26, that it has been "entered into * * *" in part within the Northern District of Texas, can be completely disregarded as mere conclusions, we think it may not be doubted that the indictment sufficiently lays the venue in Dallas County, Texas, wholly without regard to its allegations that overt acts were performed there. Nash v. United States, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232, and United States v. Socony Vacuum Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129, settle it that the offense of conspiracy under the Sherman Act is complete when the agreement or conspiracy is formed, that jurisdiction and venue lie in the district where it was formed, and that it is not necessary to allege the commission of an overt act. It is settled, too, that a conspiracy in restraint of trade is, or may be, a continuing offense, United States v. Kissel, 218 U.S. 601, 31 S.Ct. 124, 54 L.Ed. 1168, and that "A conspiracy thus continued is in effect renewed during each day of its continuance", United States v. Borden Co., 308 U.S. 188, 60 S.Ct. 182, 190, 84 L.Ed. 181. As each new member later joins the conspiracy, he in effect makes the agreement then and there to become a party to it.

▆▆▆ The charge in Par. 22 of the indictment, that the conspiracy was in part formed, that is, made, in Dallas, and in Par. 26, that it has been entered into in part in Dallas must, we think, be taken as the statement not of a conclusion but of a fact. Just as a witness may in a civil suit say, not as a conclusion but as a fact, that he made or entered into an agreement at a certain time and place, so an indictment may charge, and a witness may say, in a criminal case that a defendant made or entered into an agreement at a particular time or in a particular place. But the indictment does not stop with this. It alleges also that the conspiracy was in part performed in Dallas County, and that certain overt acts were performed there. While it is not essential to an indictment for a conspiracy to violate the Sherman Anti-Trust Act that the commission of an

overt act in furtherance of such conspiracy be alleged, the commission of such an act and its allegation in such an indictment does give local venue. United States v. Trenton Potteries, 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700, 50 A.L.R. 989, and United States v. Socony Vacuum, supra. Par. 22 of the indictment alleges that the conspiracy was carried out in part in the Dallas Division. Pars. 23, 24 and 25 state what the conspirators have agreed to do and have done, and the effect of that doing. Par. 26 directly alleges that the combination and conspiracy was carried out in part in the Northern District of Texas by performance there of "many of the acts set forth in Par. 23 hereof. Particularly, the defendants have continuously since September 1, 1939, and down to the present time, advertised food and food products, particularly meat, below cost and below the price charged for the same meat in other locations served by A & P retail stores, for the purpose and with the intent of injuring and destroying competition of independent concerns, meat dealers, and local chain stores". These allegations, when read in the light of the settled principle that an act done in furtherance of or to give effect to the conspiracy need not be in itself a violation of the statute, indeed, it may be in itself wholly innocent, leave in no doubt that the indictment, sufficiently to give venue there, charges the performance of acts in Dallas County.

■■■ Finally, we are quite clear, as the district judge was, that the indictment taken as a whole sufficiently charges as to the defendant corporations and individuals described as the A & P group that they have conspired and done things to carry out the conspiracy to restrain and monopolize trade and commerce among the several states in food and food products produced, distributed and sold throughout them. It will serve no useful purpose to discuss or cite the numerous cases[4] which have settled it that the Sherman Act condemns every means, no matter how novel, to accomplish the objective of carrying out

a conspiracy to restrain or monopolize trade. It is not the form of the combination or the particular means used, but the result to be achieved that the statute condemns. It is equally clear that it is of no importance whether the means used to accomplish the unlawful objective are in themselves unlawful. Acts done to give effect to the conspiracy may be in themselves wholly innocent acts, yet if they are a part of the sum of the acts which are relied upon to effectuate the conspiracy the Sherman Act forbids, they fall within the condemnation of the statute.

■■■ As to defendants, Business Organization, Inc. and Carl Byoir, the matter stands differently. The only factual allegation in the indictment even inferentially connecting these defendants with the other defendants is that "said defendants are public relations counsel for the A & P group". No facts are alleged to show that they committed any act, overt or otherwise, or that they dealt in food products. They are merely indicted. It is not alleged that these two defendants were employed by A & P, or that A & P has used them in the furtherance of the alleged conspiracy, or that they were stockholders, or directors, or managers, or even agents of the corporate defendants. Defendants may not be hailed into courts to stand the expense and embarrassment of trial upon an indictment of this kind without being definitely informed of the specific acts upon which their alleged guilt or complicity is predicated. Being an employee or public relations counsel for a large corporation, standing alone, is not sufficient to subject a defendant to the expense, embarrassment, and loss of time the trial of this case will involve. To join a defendant in an indictment of this kind with no further allegation of fact than is made against these two defendants is a denial of due process. It is to place upon an accused the burden of disproving a conspiracy in which the part played by him is not alleged with such definiteness as to permit him to prepare his defense. Upon the innocent it would cast a more intolerable burden than upon the

---

[4] A few of the leading cases are: Swift & Co. v. United States, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518; Standard Oil Co. v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619, 34 L.R.A.,N.S., 834, Ann. Cas. 1912D, 734; United States v. American Tobacco Co., 221 U.S. 106, 31 S.Ct. 632, 55 L.Ed. 663; United States v. Socony-Vacuum Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129; Apex Hosiery Co. v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311, 128 A.L.R. 1044; Fashion Guild v. Federal Trade Comm'n, 312 U.S. 457, 668, 61 S.Ct. 703, 85 L. Ed. 949; Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. ——.

guilty. Judged by these standards, the indictment is fatally defective as to Business Organization, Inc. and Carl Byoir, whose alleged complicity seems to have no other factual predicate in the indictment than that they were public relations counsel for one of the corporate defendants, and the demurrer of Business Organization, Inc. should have been sustained.

 As to the individual defendants, members of the A & P group who are accused, but as to whom it is not alleged when they came into the conspiracy or what particular part they had in it, while the information is meager, it is not so meager as to require quashing of the indictment as to them, since fuller information could, and if requested should, be supplied by a bill of particulars. The judgment dismissing the indictment is reversed and the cause is remanded for further and not inconsistent proceedings.

WALLER, Circuit Judge (concurring in part and dissenting in part).

One of the grounds upon which the demurrers were sustained was that the allegations in the indictment did not properly show that the venue of the case was in the Court below.

Let us first examine the question of jurisdiction and venue, for if the venue were not properly laid it would be unnecessary to examine the other grounds upon which the demurrers were sustained.

The indictment, in two counts, was brought under Sections 1 and 2 of the Sherman Anti-Trust Act, Sections 1 and 2, 15 U.S.C.A. In the first count the defendants were charged under Section 1 with having engaged in a continuing conspiracy to unreasonably restrain interstate trade and commerce, and, in the second count, under Section 2, with having entered into a continuing conspiracy to monopolize a part of interstate trade and commerce, in food and food products among the several states. They were not charged with substantive offenses.

Numerous acts were alleged to have been committed, somewhere, but in Nash v. United States, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232, and in United States v. Socony-Vacuum Oil Company, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129, it was held that in indictments for conspiracy under the Sherman Act it is not necessary to allege the commission of an overt act as is required under indictments in con-spiracy cases brought under Section 37 of the Criminal Code, Section 88, 1& U.S.C.A. Under the above cases a conspiracy to violate the Sherman Act is a completed offense when the agreement or conspiracy is made, and the view is entertained that under the Sixth Amendment to the Constitution the defendant, in a non-continuing conspiracy, without overt acts elsewhere committed, would be entitled to a trial in the District where the conspiracy was formed. In this case, however, it is alleged that the conspiracy was a continuing offense entered into many years before the bringing of the indictment and continuing up to and including the day of the filing of the indictment. The offense here charged, therefore, was not one that was made, completed, and abandoned in a day. It was one in which actors therein might come and go, and anyone joining in such a continuing undertaking, with knowledge of its purpose, may be convicted even though he was not a member when the conspiracy was initially hatched. A prosecution might have been had when the conspiracy was first entered into, or the conspiracy may be prosecuted at any place where the continuing offense was continued, or supplemented, or where the combination was enlarged in scope or numbers.

United States v. Kissell and Harned, 218 U.S. 601, 31 S.Ct. 124, 54 L.Ed. 1168, while not decisive on the question of venue, is illuminating in its discussion of a continuing conspiracy in restraint of trade, and it is not a far step from Justice Holmes' holding that, in a continuing conspiracy the *time* of making the initial illegal agreement is not to be taken as fixing the commencement of the running of the statute of limitations, to our conclusion that the *place* of making the initial illegal agreement is not necessarily to be taken as the venue for the trial of a continuing conspiracy.

A conspiracy to violate the Sherman Act, being unlawful when made, continues to be unlawful as long as it is continued. "A conspiracy thus continued is in effect, renewed during each day of its continuance." United States v. Borden Co., 308 U.S. 188, text 202, 60 S.Ct. 182, 190, 84 L.Ed. 181.

We have found no decision holding that positive, or overt, acts are not required in an indictment charging a substantive offense under the Sherman Act.

The decisions in Nash v. United States and United States v. Socony-Vacuum Oil Company, supra, hold that it is not necessary to allege an overt act in charging the offense of conspiracy under the Act, but these decisions did not hold that it was unnecessary to allege facts showing continuation and venue in a case in which continuing conspiracies are involved and conflicting questions of venue are raised, and where it is sought to prove that defendants in many states had joined such continuing conspiracy after its inception.

Notwithstanding the holding in Nash v. United States and United States v. Socony-Vacuum Oil Company, supra, that it was not necessary to allege an overt act in order to state an offense in an indictment for a conspiracy to violate the Sherman Act, nevertheless, the venue can be laid in any District in which an overt act was committed. See United States v. Trenton Potteries, 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700, 50 A.L.R. 989. It is somewhat difficult to try to reconcile or distinguish these two lines of decisions.

Undertaking to reason syllogistically, I adopt as the major premise in each syllogism accepted principles of pleading, namely: (1) Surplusage should be omitted from an indictment. (2) Federal Courts being Courts of limited jurisdiction, the jurisdictional facts must appear on the face of the pleadings. The case of Nash v. United States, supra, is the minor premise in the first syllogism, and the case of United States v. Trenton Potteries, supra, is the minor premise in the second syllogism. The following interesting result is reached:

Surplusage should be omitted from an indictment.

(1) Allegation of an overt act is a surplusage (unnecessary). Nash v. United States, supra.

Therefore, allegation of an overt act should be omitted.

But jurisdictional facts must be made to affirmatively appear.

(2) Overt acts establish jurisdiction. United States v. Trenton Potteries, supra.

Therefore, an overt act must be pleaded.

From these two syllogisms it would appear that the minor premise in the first syllogism that the allegation of an overt act is surplusage (unnecessary) is not universal in its application to all cases. We are fortified in this conclusion by the holding in United States v. Socony-Vacuum Oil Company, supra, 310 U.S. text 252, 60 S.Ct. page 858, 84 L.Ed. 1129, wherein it was held that the trial Court would be without jurisdiction unless some act pursuant to the conspiracy took place within the District. Since the District Courts of the United States are Courts of limited jurisdiction, and since the jurisdictional facts must be made to appear, and since the Court would be without jurisdiction unless some acts in furtherance of the conspiracy took place within the District, it seems necessarily to follow that the indictment should allege an act, or acts, within the District in order to show that the Court has jurisdiction. In Moran v. United States, 6 Cir., 264 F. 768, and Vernon v. United States, 8 Cir., 146 F. 121, it was held that under the Sixth Amendment to the Constitution the venue is as material as any other allegation in the indictment. By this reasoning we develop a third syllogism:

Surplusage should be omitted from an indictment.

Allegation of overt act to show venue is not always surplusage.

Therefore, allegation of overt act should not always be omitted.

It appears then that so far as charging the offense is concerned the allegation of an overt act is not necessary, but that it is necessary to allege an overt act where (1) a continuing conspiracy is to be proven, (2) the jurisdiction or venue is to be laid, (3) and the existence of the conspiracy vel non is to be proven by acts and deeds from which the jury may find the existence of the understanding or agreement. Certainly an indictment would be faulty which alleged that Jones, Smith, and Brown, living in New York, entered into a conspiracy in 1920 to violate the antitrust law, and that *Jenkins*, Jones, Smith, and Brown, in Dallas, Texas, in 1942, continued as partners in such conspiracy, without alleging facts, as distinguished from conclusions, showing, or tending to show, the continuation of the conspiracy in Dallas, Texas, by acts done in furtherance thereof in Dallas, of which Jenkins had participating knowledge. It is our view that while it is unnecessary to allege overt acts in order to describe the offense of conspiracy under the Act, nevertheless, it is necessary to allege overt acts to show the continuation of the conspiracy and jurisdiction and venue in Dallas.

A prosecution for a conspiracy under the Sherman Act could be maintained in any District where a continuing conspiracy was formed, continued, or supplemented without doing violence to the Sixth Amendment. (United States v. Kissell et al., supra.) But the Federal Court is a Court of limited jurisdiction and the jurisdictional facts must be made to affirmatively appear. It is necessary, therefore, that the indictment allege facts from which it will affirmatively appear that the District Court has jurisdiction and that the offense was committed within its jurisdiction, or else no predicate would be laid for the introduction of evidence to prove the jurisdiction, as was held necessary in United States v. Socony-Vacuum Oil Company, supra. The constitutional guarantee that the defendant shall be tried in the District where the offense was committed should not be lightly regarded. An indictment should clearly show compliance with its provisions. It is often difficult and expensive to obtain witnesses to testify at a point far removed from the scene of the offense. In the present case it appears that the dominant officers and officials of the defendant corporation resided in the State of New York and only one defendant, who is connected with the corporate defendants in an apparently minor capacity, resides in the State of Texas. According to the statement of the District Judge "some thirty or forty thousand exhibits are impounded" under some sort of a stipulation by counsel, and we like the Court below, are inclined to inquire, why is the venue sought to be fixed at Dallas, so far removed from the headquarters of the corporate defendants and the dominant corporate officials?

In view of the Sixth Amendment and the foregoing circumstances, and in light of the conclusion herein expressed that it is necessary to allege facts in this case showing (a) a continuing conspiracy, and (b) acts in furtherance thereof to lay the venue in the Northern District of Texas, we shall carefully examine the allegations of the indictment in relation to venue and the continuation of conspiracy in that District.

We begin that study in the light of several well-recognized and established principles, namely, (1) that every fact necessary to an indictment must be directly and affirmatively alleged, and charges by implication, intendment, or conclusion are insufficient; (2) the indictment must be free from all ambiguity and leave no doubt in the minds of the accused and of the Court of the exact offense intended to be charged, in order that the former may know what he is called upon to meet, and that upon plea of former acquittal or conviction the record may show with accuracy the exact offense to which the plea relates; (3) the necessary jurisdictional facts must be made affirmatively to appear.

Under Section 582, 18 U.S.C.A., a prosecution must be brought within three years of commission of the offense, and even though the offense charged here is continuing it was necessary for the indictment to allege facts, or acts, showing continuation within three years, and it was also necessary to show that acts of continuation occurred in the Northern District of Texas within three years prior to the bringing of the indictment.

It is also necessary that it be alleged that the acts of continuation in the Northern District of Texas were acts that were in furtherance of a conspiracy to restrain or to monopolize interstate commerce within the purview of the Sherman Act. If such overt acts as were alleged were not alleged to be acts in furtherance of a conspiracy to restrain, or tend to restrain, trade or commerce, or to create, or tend to create, a monopoly in trade or commerce, between the states, the indictment would certainly be defective as to any defendants who had no participation in the hatching and whose membership is based upon evidence of acts committed subsequent to the formation of the conspiracy.

The allegations of jurisdiction, venue, and continuation in the Northern District of Texas are: "The combination and conspiracy herein alleged has been entered into and carried out in part within the Northern District of Texas and within the Dallas Division thereof where the defendants, Great Atlantic and Pacific Tea Company (of Arizona) and Atlantic Commission Company, have offices and agents and transact business. During the period of said combination and conspiracy and within three years next preceding the presentation of this indictment, the defendants have performed within the Northern District of Texas and within the Dallas Division thereof many of the acts set forth in paragraph 23 hereof. Particularly, the defendants have continuously since September 1, 1939, and down to the

present time, advertised food and food products, particularly meat, below cost and below the price charged for the same meat in other locations served by A. & P. retail stores, for the purpose and with the intent of injuring and destroying competition of independent concerns, meat dealers, and local chain stores."

The allegation that the combination and conspiracy has been entered into and carried out in part within the Northern District of Texas, standing alone, is a legal conclusion, and unless it is predicated upon allegations of fact the allegation is without effect. In recognition of this principle the draftsman of the indictment undertook to set forth two or three facts: First, that Dallas is a place where the Great Atlantic & Pacific Tea Company of Arizona and the Atlantic Commission Company have officers and agents and transact business. That fact standing alone is certainly insufficient to place continuation or venue in Dallas. The second factual reference—and it is only a reference—is that the "defendants have performed within the Northern District of Texas, and within the Dallas Division thereof, *many* of the acts set forth in paragraph 23 hereof." (Italics added.) This allegation is wholly insufficient because paragraph 23 alleges twenty-five or thirty acts, some of which, standing alone, have no relation whatsoever to interstate commerce, and if this purports to be an allegation of fact it is so vague, indefinite, and uncertain that a defendant would not know how to prepare his defense or plead former jeopardy or acquittal under such an indictment, and should not be put to the burden of preparing to disprove, on the question of venue, all of them when it is alleged that only some of them occurred in Dallas. The third and only other allegation of *fact* as to venue and as to the continuity of the offense in the District is the allegation that "the defendants have continuously since September 1, 1939, and down to the present time, *advertised* food and food products, particularly meat, below cost and below the price charged for the same meat in other locations served by A. & P. retail stores, for the purpose and with the intent of injuring and destroying competition of independent concerns, meat dealers, and local chain stores." (Italics added.) The last statement purports to be partly one of fact and partly a legal conclusion predicated on the fact alleged, and

merits consideration. The last statement presents the question:

Was the act of advertising meat below cost and below the price charged in other localities served by A. & P. an act, ipso facto, in furtherance or continuation of the conspiracy to restrain and monopolize *interstate* trade and commerce, and can the allegation, standing alone, serve as the factual predicate for the legal conclusion that the conspiracy was entered into and carried out in part in the Northern District of Texas?

Addressing our inquiry to this question, we note that it appears to have been definitely settled that the Act covers not only acts that restrain interstate trade but transactions which when isolated, are local, but which tend to the "suppression of competition in the interstate market, so as 'to monopolize the supply, control its price or discriminate between its would-be purchasers.'" Apex Hosiery Company v. Leader, 310 U.S. 469, 60 S.Ct. 982, 1001, 84 L.Ed. 1311, 128 A.L.R. 1044.

The indictment, however, does not allege that the overt acts relied on to show continuation and jurisdiction and venue in the Northern District of Texas were such transactions or practices, nor that they were done with sufficient substantiality to have any effect in the suppression of competition or the monopolization of the interstate market or in the control of its prices or in the discrimination between its would-be purchasers. Stripped of its too vaguely asserted facts and its legal conclusions, it merely alleges that since September 1, 1939, and down to the present, the defendants *advertised* in Dallas food and food products, particularly meat, below cost and below the price charged for the same food in other locations served by the A. & P. retail stores. All advertising is not necessarily fruitful. Can the Court say this was? The indictment does not so allege. It does not allege that it *sold* food products lower in Dallas than it did elsewhere. It does not allege that it advertised food for the purpose of injuriously affecting *interstate* trade or commerce nor for the purpose of monopolizing interstate trade or commerce, unless general assertions and legal conclusions are to be given precedence over factual particularizations. It alleges it was done for the purpose of injuring and destroying the competition of independent concerns, meat dealers, and local chain

stores. It does not allege that the *particular act* of advertising food below cost either suppressed competition in the interstate market or monopolized the supply or controlled the price or that it discriminated between would-be purchasers, or that it was intended so to do, or that it was in furtherance of the conspiracy. A conclusion that such a result followed is not to be implied.

It is true that in Paragraph 22 of the indictment there is the allegation that the defendants, well knowing the facts, willfully and unlawfully formed and carried out in the Northern District of Texas a wrongful and unlawful conspiracy to unduly, unreasonably, and directly restrain interstate trade and commerce, and that in Paragraph 25 of the indictment it is alleged that the effect of the combination and conspiracy was to directly, substantially, and unreasonably restrain a large part of the trade and commerce in food and food products in interstate commerce, and to injure and destroy food manufacturers, processors, canners, wholesalers, and independent retail food dealers. But these are general allegations and legal conclusions, which, in view of the fact that an overt act is not necessary to be alleged in order to charge an offense, might be sufficient for every purpose except that of showing jurisdiction and venue. The constitutional right of the defendant to be tried in the district where the offense is committed, and the limited jurisdiction of the Federal Court, require particularization, as distinguished from generalization, of the allegation of the facts upon which jurisdiction is to be shown.

Furthermore, it is the universal rule that general allegations must give way to particular allegations, and particularization will always control over generalization.

Therefore, the allegations as to jurisdiction and venue in Paragraph 26 of the indictment cannot be aided by the general allegations in Paragraphs 22, 23, 24, and 25, since particular facts or acts upon which jurisdiction is predicated must be alleged and it must be alleged that such acts or facts were in furtherance of or in continuation of the conspiracy. The draftsman of the indictment recognized this fact and undertook to particularize certain acts, but he did not allege that the acts committed were in furtherance or continuation of the conspiracy, and since the particular takes precedence over the general, and since the general allegations and legal conclusions in other parts of the indictment have no factual basis for the laying of venue in Dallas, and since the factual basis relied upon to lay venue in Dallas is not alleged to have been in furtherance of the conspiracy, the Court below was without jurisdiction.

It is recognized that an overt act need not be an illegal act in order to make the *informed* actor a party to a conspiracy, but it is necessary to allege that the performer *knowingly* committed the act with the intent or purpose of furthering the conspiracy.

The charging part of the indictment as to venue and jurisdiction alleges that meat was advertised below cost, etc., "for the purpose and with the intent of injuring and destroying competition of independent concerns, meat dealers, and local chain stores". This allegation of intent and purpose is sufficient to allege an overt act in furtherance of a conspiracy to engage in a local price war, but it is insufficient to allege informed participation by any one in an interstate price war, or conspiracy to restrain or monopolize interstate trade.

In United States v. Socony-Vacuum Oil Company, supra, 310 U.S. note 59, page 224, 60 S.Ct. page 845, 84 L.Ed. 1129, it was said: "Under this indictment proof that prices in the Mid-Western area were raised as a result of the activities of the combination was essential, since sales of gasoline by respondents at the increased prices in that area were necessary in order to establish jurisdiction in the Western District of Wisconsin."

Again, on page 252, of 310 U.S., on page 858 of 60 S.Ct., 84 L.Ed. 1129, the Court further said: "Conspiracies under the Sherman Act are on the 'common law footing': they are not dependent on the 'doing of any act other than the act of conspiring' as a condition of liability. Nash v. United States, supra, 229 U.S. at page 378, 33 S.Ct. at page 782, 57 L.Ed. 1232. But since there was no evidence that the conspiracy was formed within the Western District of Wisconsin, the trial court was without jurisdiction unless some act pursuant to the conspiracy took place there."

Apparently no demurrer was interposed to the indictment in the Socony case, but if

one had been directed to the allegations of venue and jurisdiction it would have been without merit.

The allegations as to jurisdiction and venue in the Socony case were that most of the major oil company defendants had sold large quantities of gasoline in tank car lots to jobbers in that district (Western District of Wisconsin) at "artificially raised and fixed and noncompetitive prices"; that they had solicited and taken contracts and orders for gasoline in that district; and that they had required dealers and consumers therein "to pay artificially increased prices for gasoline", "*pursuant to the conspiracy*".

In the instant case it is not alleged that the meat was advertised below cost "pursuant to the conspiracy", or in furtherance of the conspiracy, and for aught it appears there was a local price war or a local or secondary conspiracy to injure competition in Dallas without reference to interstate trade and commerce. The indictment in the present case may be sufficient to charge a conspiracy to wage a destructive local price war in Dallas, but it was insufficient to charge that it was done pursuant to the main conspiracy or in furtherance thereof. No intendments can aid an indictment—all are against it—particularly when a constitutional right or jurisdictional question is involved. The offense was not committed in Dallas, so as to confer jurisdiction on the lower Court unless an overt act in pursuance, and continuance, of the main conspiracy was committed there. The selling by a clerk of a piece of meat below cost, or the engaging in a local price war in the Dallas Division, standing alone, would not be sufficient, in the face of the Sixth Amendment, to confer jurisdiction in the Dallas Division. "Unless some act pursuant to the conspiracy took place there" the indictment cannot be sustained.

The Sherman Act did not prevent a local price war, of which the consumer got the benefit. The Sherman Act does not prevent the A. & P. from selling meat cheaper in Dallas than it does in Brownville. The allegation of fact in said statement that the A. & P. advertised food products below cost and below the price charged for the same meat in other locations served by A. & P. retail stores is an allegation of fact which might be a violation of some unfair trade practice act, but since it results in cheaper meat to the consumer and since it

is not alleged to be other than a local price war, the allegation would be insufficient to show jurisdiction in the absence of an allegation that said advertisements were intended to further a conspiracy to create a monopoly in a part of the interstate food trade, or to destroy competition in interstate commerce and trade.

Since it does not affirmatively appear that overt acts were committed in Dallas in furtherance or continuation of the conspiracy, I am of the view that there was a failure to comply with the Sixth Amendment, and I dissent from the contrary holding of the majority.

I concur in the view of the majority that no case is stated against Business Organization, Inc., and Carl Byoir for the reasons stated in the majority opinion and for the further reason that the lower Court was without jurisdiction.