**UNITED STATES v. THE METROPOLITAN
LEATHER & FINDINGS ASS'N, Inc.,
et al.**

United States District Court
S. D. New York.

Jan. 14, 1949.

J. Francis Hayden, Irving B. Glickfeld and John D. Swartz, Sp. Assts. to Atty. Gen., for the United States.

Breed, Abbott & Morgan, of New York City (William L. Hanaway of New York City, of counsel), for defendants Griffin Mfg. Co., Inc. and William F. Smith.

Kaye, Scholer, Fierman & Hays, of New York City (James S. Hays and Jack L. Ratzkin, both of New York City, of counsel), for defendants The United States Leather Co. and Robert L. Lerch.

Simon E. Sobeloff, of Baltimore, Md., for defendants Cat's Paw Rubber Co., Inc. and Morris Eisen.

Hirleman, Vaughan & Ecker, of New York City (David Ecker, of New York City, of counsel), for defendants The ITS Co. and Jacob Goldstein.

Morris D. Reiss, of New York City, for defendants Isaac Lippman and Max Perlstein.

Robert W. Meserve, of Boston, Mass., and Dudley L. Miller, of New York City, for defendant Henry F. Keating.

James E. Ingram, of Hagerstown, Md., for defendants O'Sullivan Rubber Corp. and Warren S. Winterson.

Cahill, Gordon, Zachry & Reindel, of New York City (Mathias F. Correa and George Nebolsine, both of New York City, of counsel), for defendants The Goodyear Tire & Rubber Co., Inc. and Harry L. Post.

Corcoran & Kostelanetz, of New York City (Rexford E. Tompkins, of New York City, of counsel), for defendants The Linen Thread Co., Inc. and Samuel Barbour.

MEDINA, District Judge.

On November 15, 1948 Isaac Lippman and Max Perlstein, two of the defendants in this criminal anti-trust action, moved to dismiss the indictment as not stating facts sufficient to constitute an offense against the United States. They asserted that the allegations of venue in paragraph 16 of the indictment were insufficient and that the indictment failed to allege the commission of any acts in furtherance of

the conspiracy. I denied this motion on November 23, 1948, without opinion.

On November 30, 1948 certain other of the defendants moved to dismiss the indictment, and, along with defendants Lippman and Perlstein, requested bills of particulars. Federal Rules of Criminal Procedure, rules 7(f), 12(b), 18 U.S.C.A. After argument, the case was adjourned for a further hearing on December 15 and 16. At that time, certain other defendants moved to dismiss and requested bills of particulars.

## I. Motions to Dismiss.

### A. *Multiple Punishment*

The defendants were indicted in two counts for conspiracies in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2. The charging paragraph (13) of count one alleges a violation of Section 1 and the charging paragraph (18) of count two a violation of Section 2, each substantially in the words of the statute. Both charging paragraphs are followed by identical paragraphs (14 and 19) which state the substantial terms of the conspiracies. Defendants The United States Leather Company and Robert L. Lerch have moved to dismiss counts one and two as violative of the Fifth Amendment in that they "allege conspiracies which are not reciprocally distinguishable from and independent of each other," citing such cases as Blockburger v. United States, 1932, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306, and Albrecht v. United States, 1927, 273 U.S. 1, 47 S.Ct. 250, 71 L.Ed. 505. Defendants contend that, if convicted on each count, they will be punished twice for the same acts, since every ingredient of a violation of Section 1 is, by the terms of the indictment, present in a violation of Section 2.

The problem of multiple punishment or double jeopardy in connection with a course of conduct that violates more than one statute is complex, and the criteria for determining just how much criminal liability may constitutionally be pressed from the defendant's course of conduct are not wholly satisfactory. See Notes, Double Jeopardy and the Multiple-Count Indictment, 57 Yale L.J. 132 (1947); Identity of Offenses: A Study in Judicial Method, 45 Harvard L.Rev. 535 (1932). The complexity increases when the offenses charged are conspiracies, especially when their "possibilities for miscarriage of justice to particular individuals" increase as the number involved "is broadened to include more and more, in varying degrees of attachment to the confederation." Kotteakos v. United States, 1946, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557.

Antitrust cases, however, lay down a sufficiently clear rule as to indictments charging violations of Sections 1 and 2 of the Sherman Act based on the same evidence. American Tobacco Co. v. United States, 6 Cir., 1944, 147 F.2d 93, 116–117, certiorari granted on other grounds, 1945, 324 U.S. 836, 65 S.Ct. 864, 89 L.Ed. 1400, rehearing denied, R. J. Reynolds Tobacco Co. v. United States, 1945, 324 U.S. 891, 65 S.Ct. 1021, 89 L.Ed. 1438, affirmed on other grounds, 1946, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575; Montrose Lumber Co. v. United States, 10 Cir., 1941, 124 F.2d 573, 575–576; United States v. Shapiro, 2 Cir., 1939, 103 F.2d 775; United States v. Buchalter, 2 Cir., 1937, 88 F.2d 625, 628, certiorari denied sub nom. Shapiro v. United States, 1937, 301 U.S. 708, 57 S.Ct. 942, 81 L.Ed. 1362; United States v. MacAndrews & Forbes Co., C.C.S.D.N.Y.1907, 149 F. 836, writ of error dismissed, 1908, 212 U.S. 585, 29 S.Ct. 681, 53 L.Ed. 661; United States v. A. B. Dick Co., N.D.Ohio 1947, 7 F.R.D. 437, 439–441; cf. United States v. Socony-Vacuum Oil Co., 1940, 310 U.S. 150, 224 n. 50, at 226, 60 S.Ct. 811, 84 L.Ed. 1129. I am not persuaded that American Tobacco Co. v. United States, 1946, 328 U.S. 781, 787–788, 815–816, 66 S.Ct. 1125, 90 L.Ed. 1575, is to the contrary. See United States v. A. B. Dick Co., N.D.Ohio 1947, 7 F.R.D. 437, 439–441.

True it is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. Blockburger v. United States, 1932, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306; Albrecht v. United States, 1927, 273 U.S. 1, 47 S.Ct. 250, 71 L.Ed. 505;

Morgan v. Devine, 1915, 237 U.S. 632, 35 S.Ct. 712, 59 L.Ed. 1153. But a monopoly may well be the consummation of a retraint of trade or a series of restraints of trade; and a conspiracy to restrain trade a mere preliminary or step in a conspiracy to monopolize. Moreover, and in any event, intent forms a radical ingredient of each crime and the fact of intent to restrain trade under Section 1 is not the same as the fact of intent to monopolize under Section 2.

The motion is denied.

### B. Venue—Statute of Limitations

Defendants The Goodyear Tire & Rubber Company and Harry L. Post have moved to dismiss on the ground that "The indictment does not contain a sufficient allegation that the combination and conspiracy alleged was formed in part and carried out in part within the Southern District of New York within the applicable period of limitations."

Count one of the indictment is similar, in the respects challenged, to count two. The pertinent paragraphs of count one are:

"1. Whenever the term 'Metropolitan area' is used herein, it shall mean the State of New Jersey, except the City of Camden, and the Counties of New York, Kings, Queens, Bronx, Richmond, Nassau, Suffolk and Westchester in the State of New York.

"11. More than 6,000 shoe repairmen are located within the Metropolitan area, and their total annual volume of trade amounts to approximately $50,000,000. Nearly all said shoe repair shops purchase leather and shoe findings from approximately 200 finders within the Metropolitan area. The total annual volume of trade done by finders within the Metropolitan area is approximately $20,000,000.

"13. Beginning in or about the year 1930, the exact date being to the Grand Jurors unknown, and continuing to the time of the presentment of this indictment, the defendants and other persons to the Grand Jurors unknown, have been engaged in a continuing combination and conspiracy in restraint of the aforesaid trade and commerce among the several states in leather and shoe findings, in violation of Section 1 of the Act of Congress of July 2, 1890, as amended, (15 U.S.C. Sec. 1 [15 U.S.C.A. § 1]), commonly known as the Sherman Act.

"14. The aforesaid combination and conspiracy has consisted of a continuing agreement and concert of action among the defendants, the substantial terms of which have been and are that:

"(a). The prices, terms and conditions of sale at which leather and shoe findings be sold by finders be established, fixed and maintained; * * *

"16. The combination and conspiracy hereinbefore described has been formed in part and carried out in part within the Southern District of New York during all or part of the period covered by this indictment and within the period of the applicable statute of limitations, in the following manner: the defendants and others, to the Grand Jurors unknown, have during said periods of time attended meetings of the Association in New York City, at which the substantial terms of the combination and conspiracy hereinabove alleged have been discussed and agreed upon."

Frankfort Distilleries v. United States, 10 Cir., 1944, 144 F.2d 824, approved counts of an indictment similar to those above quoted over a ruling of the lower court, United States v. Safeway Stores, (Maryland), D.C.Kan.1943, 51 F.Supp. 448, 455–459, and objections from the dissenting judges, 144 F.2d at 835–836, 840–842, similar to those the defendants now urge. United States v. New York Great Atlantic & Pacific Tea Co., 5 Cir., 1943, 137 F.2d 459, 463–464, approved similar language in an indictment, again over similar objections. 137 F.2d at 467–470. See also American Tobacco Co. v. United States, 6 Cir., 1944, 147 F.2d 93, 120. Paragraphs 13 and 16 of the present indictment must, of course, be read together. United States v. Armour & Co., 10 Cir., 1943, 137 F.2d 269, 270.

The conspiracy being a continuing one, the allegations of time are unobjectionable. United States v. Borden Co., 1939, 308 U.S. 188, 202, 60 S.Ct. 182, 84 L.Ed. 181; United States v. Kissel, 1910, 218 U.S. 601, 607–610, 31 S.Ct. 124, 54 L.Ed. 1168; Patterson v. United States, 6 Cir.,

1915, 222 F. 599, 630–631; United States v. MacAndrews & Forbes Co., C.C.S.D. N.Y.1906, 149 F. 823, 830. The absence of allegation of overt acts is unobjectionable. Nash v. United States, 1913, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232. Venue is properly laid in this district if any part of the conspiracy was formed or if any acts in furtherance of it were carried out here. United States v. Trenton Potteries Co., 1927, 273 U.S. 392, 402–404, 47 S.Ct. 377, 71 L.Ed. 700, 50 A.L.R. 989; Hyde v. United States, 1912, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614. Paragraph 16 alleges the conspiracy was formed here; paragraph 13, by alleging the conspiracy was a continuing one, charges that it was "in effect renewed during each day of its continuance," United States v. Borden Co., 1939, 308 U.S. 188, 202, 60 S.Ct. 182, 84 L.Ed. 181, until the time of the indictment. Paragraph 14 indicates the connection of this continually renewed conspiracy with the Metropolitan area in subparagraphs (b), (c), (d), and (f) not quoted above.

█ If any of the defendants withdrew from the conspiracy long enough ago for the statute of limitations to bar prosecution now, they may show that upon the trial. United States v. Kissel, 1910, 218 U.S. 601, 610, 31 S.Ct. 124, 54 L.Ed. 1168; Boyle v. United States, 7 Cir., 1919, 259 F. 803, 807.

The motion is denied.

### C. Robert L. Lerch and Harry L. Post

█ Defendants Robert L. Lerch and Harry L. Post have moved to dismiss the indictment on the further ground that its allegations as to them are insufficient. Each is named in the indictment only once, in paragraph 10(a), the former as associated with the corporate defendant U. S. Leather with the "Title or Position" of "Sales Manager" at New York, New York, and the latter as associated with the corporate defendant Goodyear with the "Title or Position" of "General Manager Shoe Products Div." at Akron, Ohio. They rely upon United States v. New York Great Atlantic & Pacific Tea Co., 5 Cir., 1943, 137 F.2d 459, 464–465. That was a prosecution of food and food products dealers for a conspiracy to restrain and monopolize trade in food and food products. The only connection between the group of dealers and the defendants Business Organization, Inc., and the chairman of its board, Carl Byoir, was that Business Organization, Inc., was public relations counsel for the group. The indictment was dismissed as to Business Organization, Inc., and Carl Byoir. But the Court went on to say, 137 F.2d at 465: "As to the individual defendants, members of the A & P group who are accused, but as to whom it is not alleged when they came into the conspiracy or what particular part they had in it, while the information is meager, it is not so meager as to require quashing of the indictment as to them."

Similarly here, while the information as to these moving individual defendants in the present indictment is meager, it is not so meager as to require quashing the indictment as to them. Their relationship to U. S. Leather and Goodyear is here sufficiently disclosed.

The motions are denied.

### D. Vagueness and Indefiniteness—In General

█ Defendants The United States Leather Company, Robert L. Lerch, Henry F. Keating, The Goodyear Tire & Rubber Co., and Harry L. Post have moved to dismiss the indictment for not stating offenses against the United States, and as vague and indefinite contrary to the Fifth and Sixth Amendments and Rule 7(c) of the Federal Rules of Criminal Procedure.

Frankfort Distilleries v. United States, 10 Cir. 1944, 144 F.2d 824, 830–832, and United States v. New York Great Atlantic & Pacific Tea Co., 5 Cir. 1943, 137 F.2d 458, 462–463, are all the authorities I need cite in holding the indictment is not vague and indefinite. The term "leather and shoe findings" is not any more indefinite than the term "food and food products" in the A & P case, which apparently no one objected to. Further discussion seems unnecessary.

The motions are denied.

### II. Requests for Particulars

The defendants who moved to dismiss, as well as certain other defendants, have submitted about ten separate requests for bills of particulars.

The precedents furnish little help in disposing of requests for bills of particulars in criminal cases. On the one hand, many cases affirm the right of the defendant to particulars to enable him to prepare his defense; on the other, just as many refuse defendants particulars which would compel the government to disclose its evidence. How one can light upon particulars which help a defendant prepare his case but do not compel disclosure of evidence, or, contrariwise, do not compel disclosure of evidence but help a defendant prepare his case, the authorities do not say. The answer is of course that each has somewhat of the nature of the other, and passing on requests for particulars requires drawing a line in a continuum. But if, as has been said, the drawing of the line "is an art and not a science," United States v. Aluminum Co. of America, D.C.S.D.N.Y.1941, 41 F.Supp. 347, 348, the authorities cannot be expected to be too helpful.

The complexity and uncertainty in disposing of requests for particulars probably derive from our not as yet having articulated the philosophy underlying disclosure and discovery procedures in criminal cases, despite the progress made in civil cases under the Federal Rules of Civil Procedure, 28 U.S.C.A. For the time being, passing on requests for particulars in federal criminal cases remains difficult, and solutions when reached are hardly ever wholly satisfactory.

If the court possessed some divining rod by which it might determine the areas of probable actual surprise, the problem would be greatly simplified. The difficulty, however, particularly in antitrust cases, is that the government is generally overfearful that it may be curtailed in its proof while counsel for the defendants, perhaps from bitter experience in other cases, are overfearful that they will be caught unawares at the trial by evidence of specific instances of alleged wrongdoing, when it is too late to conduct an investigation sufficiently thorough to develop all that might otherwise be produced in refutation or extenuation of the charge. In cases where practically an entire industry is involved and the defendants are located in all parts of the country, it would seem almost inevitable that some prejudice would result if the generality of the terms of the indictment were not to some extent made more specific. Perhaps this may all come down to a question of the amount of money to be expended in preparation for trial by the various defendants. But it is hard to see the reasonableness of requiring the interviewing of hundreds and perhaps thousands of miscellaneous employees, when perhaps a dozen or so, in the case of a single corporate defendant, would suffice, if the charge were particularized.

■ The lengthy oral argument of these motions developed another circumstance which may serve somewhat to clarify the problem. Evidently it was formerly the practice in conspiracy cases such as this to set forth a certain number of overt acts in the indictment. In many instances the courts very naturally required particulars of these specific charges, sufficient to make it possible for defendants to prepare to meet them at the trial. This led to the abandonment of the practice, as it was clearly the law, as stated in the foregoing part of this opinion, that it was not necessary in conspiracy cases of this character to allege any overt acts whatever. But the charge here is of a combination and conspiracy consisting "of a continuing agreement and concert of action among the defendants." Under the allegation of "concert of action" the government will doubtless offer proof of the very sort of specific price fixing, or refusals to sell to particular firms or individuals, or boycotts and so on which were formerly set forth as overt acts. I cannot perceive the fairness of withholding such charges from defendants until the trial on the ground that "there would be sufficient time after the government introduces a witness" to investigate the matter and adduce the necessary explanation or refutation. Certainly it will not do to assume that there is no explanation or refutation, as defendants in antitrust cases are presumed to be innocent of the crimes charged, just as are defendants in other cases.

■ Where a conspiracy may or may not be inferred from numerous details and circumstances of one kind or another,

which may be found to constitute a significant pattern of actual or prospective conduct in violation of the Sherman Act, I can readily see how the direction of a bill of particulars may serve merely as a source of embarrassment to the government, while accomplishing little else to the advantage of defendants. For this reason most of the particulars here requested by the various defendants will be denied, except insofar as the government has consented to give them. Thus the geographical extent of the conspiracy here charged will be limited to the "Metropolitan area," as defined in the indictment. The government will also, in the bill to be served, inform each corporate and individual defendant of the earliest date of any documentary proofs connecting or tending to connect each such corporate and individual defendant with the alleged conspiracy. The list of those who are claimed to have attended meetings of the Metropolitan Leather & Findings Association, Inc., to the extent known to the government, will be furnished.

On the other hand, where the government will at the trial rely upon proof of specific acts of price fixing, refusals by producers to sell to finders and wholesalers not approved by the defendant Association, refusals by producers and wholesalers to sell to shoe repairmen, refusals by wholesalers to sell to finders, refusals by finders to sell to any person not approved by the Association, refusals to accept persons as members of the Association, and boycotts of producers and wholesalers supplying finders not approved by the Association, I shall direct that at least 30 days before the trial there be furnished to the defendants claimed to have participated in such alleged acts, a statement identifying each separate occasion relied on, with sufficient detail fairly to apprise defendants of the transactions to be proved. It should be possible to do this in most cases without giving the names of any prospective witnesses or disclosing the government's evidence. The purpose of this direction is solely to afford defendants a reasonable opportunity to meet the charges of doing these specific acts.

If counsel for the government and counsel for the respective defendants will confer together in an endeavor to implement these instructions in a reasonable way, I feel sure that the ends of justice will be met and the trial greatly expedited.

Settle order on notice.