**UNITED STATES of America**

v.

**JOHNS–MANVILLE CORPORATION,** Keasbey and Mattison Company, Robert F. Orth, Louis F. Frazza, Robert R. Porter, Norman L. Barr, and James R. Reichel.

**Cr. No. 21118.**

United States District Court
E. D. Pennsylvania.

Dec. 13, 1962.

Drew J. T. O'Keefe, U. S. Atty., and Raymond K. Carson, Kenneth R. Lindsay and Rodney O. Thorson, Attys., Dept. of Justice, Washington, D. C., for plaintiff.

Thomas D. McBride, Philadelphia, Pa., for defendants Johns-Manville Corp., Orth and Frazza.

Henry T. Reath, Philadelphia, Pa., for defendants Keasbey & Mattison Company, Barr and Reichel.

Joseph W. Swain, Jr., Philadelphia, Pa., for defendant Porter.

VAN DUSEN, District Judge.

The defendants in this criminal action under 15 U.S.C.A. §§ 1 and 2 are two manufacturing corporations and certain individuals employed (or previously employed) by them, and the case is now before the court on Motions To Dismiss the indictment (Documents Nos. 15–21 and 23–26).

The indictment alleges that beginning sometime prior to 1954, the exact date being to the grand jurors unknown, and continuing thereafter up to and including the date of the return of the indictment, the defendants and other co-conspirators have engaged in a combination and conspiracy in unreasonable restraint of interstate and foreign trade and commerce and in a combination and conspiracy to monopolize interstate and foreign commerce in asbestos-cement pipe and couplings. Also, the defendants are charged with attempting to monopolize the interstate and foreign trade and commerce in asbestos-cement pipe and couplings.

The Motions to Dismiss the indictment have been argued in the following three groups:

I. Motions of all defendants to dismiss the indictment for lack of specificity;

II. Motions of all defendants to dismiss because of irregularities in the use of the grand jury process; and

III. Motion on behalf of three defendants, Messrs. Frazza, Barr and Reichel, to dismiss on the grounds that their prior testimony made them immune from this indictment.

I. Alleged Lack of Specificity (see briefs docketed under Nos. 36 & 38)

Paragraph 11 of the indictment alleges that defendants are "the only manufacturers of asbestos-cement pipe and couplings in the United States" and accounted for approximately 95% of the sales of such products in the United States; imports accounted for approximately 5% of such sales.

Paragraph 14 of the indictment sets forth the substantial terms of the continuing agreement, understanding and concert of action which is alleged to be the

basis of the illegal combination and conspiracy.[1] Paragraph 15 sets forth certain acts which the defendants are alleged to have done for the purpose of effectuating the conspiracy and paragraph 16 sets forth the alleged effects of the conspiracy and attempt to monopolize. Paragraph 17 states:

"The offense charged in this count of the indictment has been committed in part within the Eastern District of Pennsylvania and within the jurisdiction of this Court. During the period of time covered by this indictment and within five years next preceding the return thereof, the defendants have performed within the Eastern District of Pennsylvania many of the acts hereinbefore charged."

The defendants contend that the indictment does not meet the standards imposed by the Fifth and Sixth Amendments of the United States Constitution and Rule 7(c) of the Federal Rules of Criminal Procedure.[2]

1. The indictment contains the elements of the offenses intended to be charged and sufficiently apprises the defendants of what they must be prepared to meet.

■ An examination of cases which have been brought under the Sherman Act establishes that this indictment is not objectionably vague, indefinite or uncertain and that defendants' position that it fails to allege sufficiently the constituent elements of the crimes must be rejected.

■■ In a conspiracy charge under the Sherman Act, overt acts, other than the conspiracy itself, do not have to be pleaded or proved. E. g., United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 223–225, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); Nash v. United States, 229 U.S. 373, 378, 33 S.Ct. 780, 57 L.Ed. 1232 (1913); Mercer v. United States, 61 F.2d 97, 98–99 (3rd Cir., 1932); United States v. Sherwin-Williams Co., 9 F.R.D. 69, 70 (W.D.Pa.1949).[3]

■ The field of trade and commerce in which the conspiracy operated was specified with sufficient definiteness in the indictment, which referred to it as the "asbestos-cement pipe and coupling field." See United States v. New York Great A. & Pacific Tea Co., 137 F.2d 459, 462–463 (5th Cir., 1943), cert. den. 320 U.S. 783, 64 S.Ct. 191, 88 L.Ed. 471 (1943); United States v. The Metropolitan Leather and Find. Ass'n., 82 F.Supp. 449, 453 (S.D.N.Y.1949).

(a) The time that the conspiracy started [4]

■ Since the conspiracy is alleged to be a continuing one, it is not necessary

---

1. Paragraphs 14–17 are incorporated by reference in Counts Two and Three.

2. The Fifth Amendment provides:
"No person shall be held to answer for a capital, or other infamous crime, unless on a presentment or indictment of a Grand Jury, * * *."
The Sixth Amendment provides:
"In all criminal prosecutions, the accused shall enjoy the right * * * to be informed of the nature and cause of the accusation; * * *."
Rule 7(c) states in part:
"(c) Nature and Contents. The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. It shall be signed by the attorney for the government. It need not contain a formal commencement, a formal conclusion or any other matter not neces-

sary to such statement. Allegations made in one count may be incorporated by reference in another count. It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that he committed it by one or more specified means."

3. It is also noted in relation to Counts One and Two that it is not necessary to set out the evidence to be produced at the trial to show a conspiracy (see United States v. Greater Blouse, etc. Contractors' Ass'n., 177 F.Supp. 213 (S.D.N.Y.1959) and cases there cited) or to describe it with the particularity required in stating a substantive offense. United States v. Empire Hat & Cap Mfg. Co., 47 F.Supp. 395, 398 (E.D.Pa.1942).

4. (a)–(d) list the objections of defendants as stated at p. 5 of their brief (Document No. 36).

that the indictment set forth the exact date that it commenced. Frankfort Distilleries v. United States, 144 F.2d 824, 831 (10th Cir., 1944), reversed on other grounds, 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 564 (1945); United States v. The Metropolitan Leather and Find. Assn., supra. See United States v. American Tobacco Co., 221 U.S. 106, 31 S.Ct. 632, 55 L.Ed. 663 (1911); Mercer v. United States, supra.[5]

**(b) The known members of the conspiracy**

■ The failure of the indictment to name all the alleged co-conspirators does not make it defective. United States v. Gasoline Retailers Association, Inc., 285 F.2d 688, 691–692 (7th Cir., 1961). In this case, the court said:

"It is contended by appellants that the indictment was insufficient and should have been dismissed because it failed to list the names of some of the co-conspirators whose names were known to the government and the grand jury.

"Rule 7(c) of the Federal Rules of Criminal Procedure provides that the indictment shall be 'a plain, concise and definite written statement of the essential facts constituting the offense charged' and 'need not contain * * * any other matter not necessary to such statement.' The indictment in this case did set forth 'essential facts' constituting the offense of conspiracy in restraint of trade, and there was no need to set out the particular names or identity of possible witnesses who at the trial

might prove to have been co-conspirators. United States v. Glasser, 7 Cir., 1941, 116 F.2d 690. We are of the opinion that it was not necessary for the indictment to specify the names of co-conspirators even though they were known to the grand jury."

See United States v. Consolidated Laundries Corporation, 291 F.2d 563, 567 (2nd Cir., 1961).

**(c) The terms of the agreement to restrain or monopolize commerce**

■■ The conspiracy counts are sufficiently specified in this indictment. Any words which fairly import a concerted action for conniving together to restrain trade are sufficient to charge conspiracy. American Tobacco Co. v. United States, 147 F.2d 93, 117 (6th Cir., 1944), aff'd. 328 U.S. 781, 809, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946). In this case, the defendants are not merely charged with the offense substantially in the words of the Sherman Act, but the indictment also sets forth sufficient details of the crime by setting forth the substantial terms of the "agreement, understanding and concert of action",[6] as well as certain acts allegedly done in pursuance of the illegal agreement. See Frankfort Distilleries v. United States, supra, 144 F.2d at p. 832.

**(d) Specification of means by which the co-conspirators intend to carry out their conspiracy**

■ The indictment alleges the conspiracy, the substantive terms thereof, and also the methods, means and practices allegedly employed for the purpose of effectuating the monopoly.[7] Such al-

---

5. In Mercer v. United States, supra, a conspiracy indictment which stated that the conspiracy began "some time prior to March 24, 1931 (the exact time being to the grand jurors unknown)" was upheld as sufficient. In United States v. The Metropolitan Leather and Find. Ass'n., supra, an indictment charging that a conspiracy began "in or about 1930" was held valid.

6. See paragraph 14 of the indictment.

7. Paragraph 15 alleges that representatives of the corporate defendants held meetings

at 22 East 40th Street, New York City, where delivered prices, price zones, and terms of sale were agreed upon which were incorporated in price sheets. Agreements concerning the extent of deviation from the list or book price were made. Control over prices was maintained by (1) so-called "agency" agreements with independent distributors, (2) submission of non-competitive, collusive and rigged bids to Governmental agencies, (3) adoption of specifications designed to increase the cost of foreign-made pipe and to otherwise eliminate such pipe from competition

legations are a sufficient statement of "means." See Frankfort Distilleries v. United States, supra; cf. United States v. Socony-Vacuum Oil Co., supra, 310 U. S. 150, at p. 250, 60 S.Ct. 811, at pp. 856, 857, 84 L.Ed. 1129.

▆ Count Three, which alleges an attempt to monopolize in violation of 15 U.S.C.A. § 2, is likewise sufficient. An attempt to monopolize has been defined as:

> "* * * employment of methods, means and practices which would, if successful, accomplish monopolization, and which, though falling short, nevertheless approach so close as to create a dangerous probability of it, which methods, means and practices are so employed by the members of and pursuant to a combination or conspiracy formed for the purpose of such accomplishment." American Tobacco Co. v. United States, 328 U.S. 781, 785, 66 S.Ct. 1125, 1127, 90 L.Ed. 1575 (1946).

The indictment sets forth the background of the industry in question, the relation of the corporate defendants thereto (i. e., they are the only two manufacturers of asbestos-cement pipe and couplings in the United States), as well as other pertinent facts which would support a conviction on the attempted monopoly charge (see, for example, paragraph 15). The indictment is sufficiently specific as to Count Three. See American Tobacco Co. v. United States, supra, and a copy of the information in that case.

2. The indictment will not preclude the defendant from pleading an acquittal or conviction in other proceedings based on the same subject matter.

▆ The foregoing discussion makes clear that the indictment is sufficiently definite and certain to enable the defendants to plead an acquittal or conviction under it in bar of any other proceeding against them based on the same subject matter. See United States v. Sherwin-Williams Co., supra, and cases there cited 9 F.R.D. at pp. 70–71.

3. The indictment is sufficient to enable the court to determine whether evidence admissible under its terms is sufficient to support a conviction if one should be had.

▆ This indictment is sufficient to show the basis upon which an eventual conviction might be had and, hence, does not fall within the condemnation of such cases as Russell v. United States, 369 U.S. 749, 768–769, 82 S.Ct. 1038, 8 L.Ed. 2d 240 (1962), and United States v. Lamont, 18 F.R.D. 27, 31 (S.D.N.Y.1955), aff'd, 236 F.2d 312, 316–317 (2nd Cir., 1956).

▆ Also, jurisdiction and venue have been sufficiently alleged in the indictment. Since it is alleged that many of the acts charged were performed in this District, defendants' argument that venue is improper is rejected. While it is not essential for indictment for a conspiracy to violate the Sherman Act that the commission of an overt act in furtherance of such conspiracy be alleged, the commission of such an act and its allegation in such an indictment does give local venue.[8]

through two named co-conspirators and "other organizations, municipalities and awarding authorities," (4) importation and sale of Mexican-made pipe and couplings as a "fighting brand," and (5) other devices.

8. United States v. Socony-Vacuum Oil Co., supra, 310 U.S. at p. 252, 60 S.Ct. at pp. 857, 858, 84 L.Ed. 1129; United States v. Trenton Potteries, 273 U.S. 392, 402–403, 47 S.Ct. 377, 71 L.Ed. 700 (1927);

Hyde v. United States, 225 U.S. 347, 363, 367, 32 S.Ct. 793, 56 L.Ed. 1114 (1912); Brown v. Elliot, 225 U.S. 392, 400, 32 S. Ct. 812, 56 L.Ed. 1136 (1912); American Tobacco Co. v. United States, 147 F.2d 93, 120 (6th Cir., 1944), aff'd on other grounds, 328 U.S. 781, 66 S.Ct. 1125, 90 L. Ed. 1575 (1946); United States v. Empire Hat and Cap Mfg. Co., supra, 47 F.Supp. at p. 400. See Frankfort Distilleries, supra, 144 F.2d at p. 832.

Although a bill of particulars cannot save an invalid indictment,[9] answers to a bill of particulars can give defendants some of the information which is requested in defendants' brief at pp. 5–10 (Document No. 36). Cf. Glasser v. United States, 315 U.S. 60, 66, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Frankfort Distilleries v. United States, supra, 47 F.Supp. at p. 832; United States v. Tellier, 19 F.R.D. 164, 166 (E.D. N.Y.1956).

II. Alleged Abuse of the Grand Jury Process (see Documents Nos. 21 & 23–26, as well as briefs filed as Documents Nos. 37 & 39)

The supplemental motions filed by all defendants allege that the process of this court was abused by Government attorneys by requiring, by use of or under color of subpoena, certain grand jury witnesses to appear at the office of the United States Attorney for this District at times when the grand jury was not in session and (by the use of the subpoena power) requiring (or attempting to require) said witnesses to confer privately concerning the scope and character of the testimony which the witnesses were to give before the grand jury.[10] The affidavits filed by defendants at the most establish the following:

(a) The subpoenas directed the witnesses to appear at a time shortly before the grand jury convened on a day that it was scheduled to convene and at Room 4042 of the Federal Court House, which is the office of the United States Attorney and is not the grand jury meeting room.[11]

(b) One witness (S. R. MacWhinney) states in his affidavit that he was orally told by the Marshal in the District of his residence that he was required to testify before the grand jury at 3 P.M. on the afternoon before the day that the grand jury convened at 10 A.M. and that he met with representatives of the Department of Justice for 2½ hours at this afternoon meeting. His affidavit also states that he was not informed "until late in the meeting" that he was not going to testify before the grand jury that afternoon and that he had no obligation to answer questions. Although this affidavit states "I was completely confused as to what was going on and wondered why I was not being taken before the grand jury," there is no statement or indication in the affidavit that the witness did not tell the complete truth, both at the conference on the day before he appeared to testify before the grand jury and in his testimony before the grand jury.

(c) Another witness (Ernest Muehleck) stated in his affidavit that:

"They told me they had collected sufficient information to get an indictment since my previous grand jury testimony in 1958 and that I should come clean and confess. I

9. See Russell v. United States, supra, 369 U.S. at p. 770, 82 S.Ct. at p. 1050, 8 L. Ed.2d 240, and other cases cited at pp. 11–12 of Document No. 36.

10. The affidavits of the witnesses in support of the motion (none of whom are defendants in this action) are attached to Document No. 21.

11. The following language appears at p. 3 of the Government's memorandum in opposition to defendants' supplemental motion to dismiss the indictment (Document No. 37):
"The factual record discloses that in the course of the grand jury investigation some of the subpoenas *ad testificandum* and subpoenas *duces tecum*, as issued, called for the appearance of witnesses at the reception room of the United States Attorney in Philadelphia, * * * at times ranging from 15 minutes to a rare maximum of one hour and a half in advance of the scheduled time for the grand jury to meet in closed session."
This language appears at p. 3 of the affidavit of Raymond K. Carson, Esq., "attorney employed by the antitrust Division of the United States Department of Justice * * * authorized to conduct the grand jury proceedings" in this case:
" * * * witnesses were subpoenaed to appear at 'Room 4042' of the United States Courthouse (the United States Attorney's reception room) from which the witnesses were directed to the assigned grand jury room."

replied that I had no new information since my earlier testimony and that the company had done nothing wrong. Mr. Carson did most of the talking but both he and Mr. Lindsay exhibited a truculent attitude, reiterating that they had the evidence and that I should come clean.

"Mr. Carson and Mr. Lindsay did not invite me to talk with them but commanded me to follow them to their office, at which time the questioning related above went on for about one-half hour. Only then was I sent to testify before the grand jury as I had been subpoenaed to do."

This witness also indicated at no place in his affidavit that he had not told the full truth to the grand jury.

■ The Government served on counsel for defendants on the day of the argument affidavits contradicting the above testimony, but such contradictions served at such a late date (over two months after the above-mentioned affidavits of defendants had been filed) have not been considered insofar as they contradict the foregoing affidavits.[12] They have been considered insofar as they are not inconsistent with defendants' affidavits.

As pointed out above, there is nothing in the record to establish that the witnesses were coerced in their testimony before the grand jury or that their testimony was in any way changed because of their discussions with Government counsel. Neither defendants nor the undersigned have been able to find any cases stating that a grand jury may only consider "unrehearsed testimony." [13]

■ Federal courts have inherent power over their process to prevent abuse, oppression and injustice and the process of the court comprehends proceedings before the grand jury and the means whereby witnesses are compelled to attend such proceedings. In re National Window Glass Workers, 287 F. 219, 224–225 (E.D.Ohio 1922). Cf. McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943). However, it has been consistently stated that there should be no curtailment of the inquisitorial power of the grand jury except in the clearest case of abuse,[14] and mere inconvenience not amounting to harassment does not justify judicial interference with the functions of the grand jury.[15]

■ Although a grand jury subpoena could be used abusively by the

12. Where a party wishes to supplement the record for purposes of an argument in rebuttal to the affidavits or depositions of the moving party, documents supplementing the record cannot be properly considered if they are filed at the time of the argument, thereby precluding the moving party from making any rebuttal. All such supplementary documents should be filed at least a week in advance of the time that the moving party is required to file his brief. Fortunately, in this case an examination of the record makes it unnecessary to resolve, by deposition or otherwise, the conflict in the affidavits because the affidavits of the moving party are not such as to substantiate plaintiff's claim of prejudice under the decisions cited below.

13. On the contrary, see United States v. Smyth, 104 F.Supp. 283 (N.D.Cal.1952), where the indictment was not dismissed even though the Assistant United States

Attorney gave the grand jurors committee reports, specifications prepared by a Government employee, and his own notes.

Note, also, Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956), where the United States Supreme Court held that indictments could not be challenged because of allegations that there was inadequate or incompetent (hearsay) evidence before the grand jury. See, also, Holt v. United States, 218 U.S. 245, 248, 31 S.Ct. 2, 54 L.Ed. 1021 (1910).

14. United States v. United States District Court, 238 F.2d 713, 722 (4th Cir., 1956), cert. den. 352 U.S. 981, 77 S.Ct. 382, 1 L. Ed.2d 365 (1957) ; Application of Iaconi, 120 F.Supp. 589, 591 (D.Mass.1954) ; In re Grand Jury Proceedings, 4 F.Supp. 283, 284 (E.D.Pa.1933).

15. Application of Linen Supply Cos., 15 F.R.D. 115, 118 (S.D.N.Y.1953), and cases cited therein.

United States Attorney's office,[16] this record does not show that there was any such abuse of process in this case which would justify this court in dismissing this indictment. The fact that the witnesses were ordered to appear in the office of the United States Attorney is not inherently prejudicial to defendants.[17] Judge Miller stated as follows in United States v. Stirone, 168 F.Supp. 490 (W.D. Pa.1957),[18] at page 497:

"It is next suggested that the government's improper use of subpoenas requires the granting of a new trial. See Rule 17, F.R.Cr.P., 18 U.S.C.A. In many instances subpoenas were issued commanding the appearance of witnesses to testify in the 'United States District Court for the Western District of Pennsylvania' at '633' or at '644' New Federal Building, Pittsburgh, the latter being room numbers of the offices of the United States Attorney. The procedure followed is disapproved. The validity of the subpoenas from the viewpoint of the witnesses is not in question since each took the stand and without objection gave testimony in response to the subpoena. In re Meckley, 1943, D.C.M.D.Pa., 50 F. Supp. 274, affirmed, 3 Cir., 1943, 137 F.2d 310, certiorari denied, 1943, 320 U.S. 760, 64 S.Ct. 69, 88 L.Ed. 453; 97 C.J.S. Witnesses §§ 22, 25, pp. 374, 376 (1957).

Assuming that defendant has standing to object to a misuse of the subpoena power, a valid objection must be based on prejudice to his cause. The United States Attorney informs the court that the subpoenas were drawn in the form described above only to insure the keeping of proper records for the payment of witness fees. There is no averment or proof of ulterior purpose or of prejudice. There accordingly is nothing before the court to justify a presumption of injury to some substantial right of the defendant. See Rule 52(a), F.R.Cr.P., 18 U.S.C.A."

The undersigned concurs in the third sentence of the above quotation as applied to the record in this case, showing subpoenas directing witnesses to report to the United States Attorney's office. However, the testimony before the grand jury of the witnesses mentioned in (b) and (c) above has been examined and there is no indication of any effective pressure upon such witnesses.[19]

Furthermore, it is noted that there are federal cases which take the position that the proper remedy for an abuse of the grand jury process is not to dismiss the indictment but through discipline of the offending officials by contempt or through other procedures. See United States v. Smyth, supra, footnote 13, 104 F.Supp. at pp. 301 and 308, and cases there cited.[20]

16. See, e. g., *Application of Certain Chinese Family B. & D. Ass'ns.*, 19 F.R.D. 97 (N.D.Cal.1956). The Government agrees with defense counsel that the dicta in *Durbin v. United States*, 94 U.S.App. D.C. 415, 221 F.2d 520, 522 (1954), which states that an abuse of process could result by the use of the grand jury subpoena by the U. S. Attorney's office for the sole purpose of carrying on its own inquisition, is a correct statement. The dicta in that case, however, is not applicable to the facts in this record.

17. See *United States v. American Stevedores*, 16 F.R.D. 164, 170–172 (S.D.N.Y. 1954) ; *United States v. Chin Lim Mow*, 12 F.R.D. 433 (N.D.Cal.1952). See, also, *In re Meckley*, 50 F.Supp. 274, 275 (M.D.Pa.1943), aff'd. 137 F.2d 310, 311 (3rd Cir., 1943), cert. den. 320 U.S. 760, 64 S.Ct. 69, 88 L.Ed. 453 (1943), indicating that a witness who appeared and testi-

fied before the grand jury had waived any objection to the legality of the subpoena.

18. Aff'd. 262 F.2d 571 (3rd Cir., 1958), reversed on other grounds, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

19. There is nothing whatever to suggest that Mr. MacWhinney was confused on the day that he testified before the grand jury.

20. The undersigned certainly does not condone the activities described in the affidavits attached to defendants'. Motion docketed as Document No. 21, which have been referred to above, but the detailed affidavits filed by the Government with its brief, which has been docketed as Document No. 37, present an entirely different picture of what transpired. There would seem to be no objection to the Government attorneys saving the time of grand jurors, who are heavily burdened in this

It is also noted that the United States Supreme Court has stated: "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for a trial of the charge on the merits." Costello v. United States, supra, 350 U.S. at p. 363, 76 S.Ct. at p. 408, 100 L.Ed. 397. See, also, Lawn v. United States, 355 U.S. 339, 349, 78 S.Ct. 311, 2 L.Ed.2d 321 (1957).

### III.  Alleged Immunity of Defendants Frazza, Barr & Reichel

In April 1958, the individual defendants, Frazza, Barr and Reichel, testified under subpoena before a Grand Jury of this court investigating possible antitrust violations in the asbestos-cement pipe and coupling industry. In June 1962, another grand jury of this court returned the indictment in this action, naming these three individuals as co-defendants. Count One of this indictment states (paragraph 13):

"Beginning sometime prior to 1954, the exact date being to the grand jurors unknown, and continuing thereafter up to and including the date of the return of this indictment, the defendants and the co-conspirators have engaged in a combination and conspiracy in unreasonable restraint of the aforesaid interstate and foreign trade and commerce in asbestos-cement pipe and couplings, in violation of Section 1 of the * * * Sherman Act." (15 U.S.C.A. § 1)

Count Two of the indictment contains identical language to the above to the word "conspiracy" and continues as follows (paragraph 19):

" * * * to monopolize the aforesaid interstate and foreign trade and commerce in asbestos-cement pipe and couplings, in violation of Section 2 of the * * * Sherman Act." (15 U.S.C.A. § 2)

Count Three of the indictment states (paragraph 24):

"Beginning sometime prior to 1954, the exact date being to the grand jurors unknown, and continuing thereafter up to and including the date of the return of this indictment, the defendants have attempted to monopolize the aforesaid interstate and foreign trade and commerce in asbestos-cement pipe and couplings, in violation of Section 2 of the * * * Sherman Act." (15 U.S.C.A. § 2)

The testimony given by these individual defendants in April 1958 concerned talks they had had of possible methods of restricting the importation of asbestos-cement pipe into this country from foreign manufacturers, as well as their responsibility and activities in establishing, and varying, standard prices set by the corporate defendants. These individual defendants were also questioned concerning the adoption of specifications for pipe to be used in this country in order to increase the cost of foreign-made pipe and the membership and organization of societies which adopted such specifications.

As part of the anti-trust laws, Congress has provided as follows:

"No person shall be prosecuted or be subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence, documentary or otherwise, in any proceeding, suit, or prosecution under sections 1–7 of this title and all Acts amendatory thereof or supplemental thereto, * * *." (15 U.S.C.A. § 32)

---

court with extensive consideration of possible anti-trust violations, by having potential witnesses determine in advance what exhibits they can or cannot identify, arranging for the compensation of such witnesses, and similar matters described in the affidavits attached to the above-mentioned brief of the Government. The representatives of the Department of Justice and the United States Attorney are being requested to confer with the undersigned in order to improve the method of dealing with witnesses before the grand jury in the future.

In Heike v. United States, 217 U.S. 423, 431, 30 S.Ct. 539, 542, 54 L.Ed. 821 (1910), the court said:

"* * * we are of opinion that the statute does not intend to secure to a person making such a plea immunity from prosecution, but to provide him with a shield against successful prosecution, available to him as a defense, and that when this defense is improperly overruled it may be a basis for the reversal of a final judgment against him."

As pointed out in United States v. Swift, 186 F. 1002 (N.D.Ill.1911),[21] immunity gained under a statute such as 15 U.S.C.A. § 32 does not grant a license to violate the law perpetually. 15 U.S.C.A. §§ 32 and 33 do not preclude prosecution of these defendants under an indictment alleging their participation on and after May 1, 1958, in the conspiracy charged and the attempt to monopolize charged. An examination of the testimony before the grand jury discloses that the grand jury had before it testimony concerning the offenses charged in the three counts of this indictment occurring after May 1, 1958.[22] This record does not justify the assumption that the matters covered in such testimony were "substantially connected with the transactions in respect of which [these defendants] testified" in April 1958. See United States v. Monia, 317 U.S. 424, 430, 63 S.Ct. 409, 87 L.Ed. 376 (1943).[23] In Costello v. United States, supra, the court held 350 U.S. at p. 363, 76 S.Ct. at p. 408, 100 L.Ed. 397 (as quoted in part at p. 15 above):

"An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more."

See, also, Lawn v. United States, supra, 355 U.S. at pp. 348–350, 78 S.Ct. at pp. 317–318, 100 L.Ed. 397.

As to the requirement that the indictment provide a sufficient warning to these defendants of the time of commission of the offenses with which they are charged, an examination of many cases on this point indicates that the allegations in this indictment are sufficient as to the offenses charged in each of the three counts. See United States v. Cowell, 243 F. 730 (D.Ore.1917), aff'd sub. nom. Butchart v. United States, 295 F. 557, 579 (9th Cir., 1924); United States v. New Departure Mfg. Co., 204 F. 107, 112, 114 (W.D.N.Y.1913); United States v. Eccles, 181 F. 906, 908 (D.Ore.1910); and cases cited above at pp. 4–5.

In United States v. Borden Co., 308 U.S. 188, 60 S.Ct. 182, 84 L.Ed. 181 (1939), the court held that an indictment was sufficient even though it might be found that defendants had a license to engage in the conspiracy charged during part of the time alleged in the indictment.

21. See, also, United States v. Smith, 206 F.2d 905, 907–908 (3rd Cir., 1953), where this case is cited with approval.

22. In Hyde v. United States, supra, 225 U.S. at pp. 367–372, 32 S.Ct. at pp. 802–804, 56 L.Ed. 1114, the court recognized that a defendant may withdraw from a conspiracy and then rejoin it or give evidence of a conspiracy to the Government and continue to acquiesce in it. See, also, United States v. Borden Co., 308 U.S. 188, 202, 60 S.Ct. 182, 84 L.Ed. 181 ff. (1939); cf. United States v. Consolidated Laundries Corporation, supra, 291 F.2d at pp. 573–574; Smith v. United States, 106 U.S.App.D.C. 26, 269 F.2d 217, 218 (1959), cert. den. 361 U.S. 865, 80 S.Ct. 130, 4 L.Ed.2d 108 (1959).

23. If at the trial of these defendants the Government cannot establish its case without evidence precluded by the statutory immunity, these defendants will be entitled to a judgment of acquittal. The Government concedes in its brief (p. 12 of Document No. 40) that an instruction at the trial of the following type may be justified:

"* * * as to each count, the jury must find each of the defendants Frazza, Barr and Reichel not guilty unless the Government has proved, beyond a reasonable doubt, that subsequent to his testimony in April, 1958, each such defendant participated in the offense therein charged."

The court used this language 308 U.S. at p. 202, 60 S.Ct. at p. 190, 84 L.Ed. 181:

"There is indeed a contention that there was a license (No. 30) issued by the Secretary of Agriculture in 1934, amended in January, 1935, and in force until March 2, 1935, which related to the marketing of milk in the Chicago area, and hence that defendants operating under that license were not subject to the charges of the conspiracies alleged to have begun in January, 1935. But the allegations of the indictment are that the unlawful conspiracies continued throughout all the period mentioned in the indictment, that is, up to the time of its presentment in November, 1938. This clearly imports that the conspiracies were operative after the license came to an end and thus in the absence of any license. A conspiracy thus continued is in effect renewed during each day of its continuance."

For the reasons given under I–III above, the Motions and Supplemental Motions to Dismiss the indictment must be denied.